IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2006

## CORNELIUS MARSHALL v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5492     J. Weber McCraw, Judge**

_____

**No. W2005-01170-CCA-R3-PC  - Filed March 30, 2006**

_____

The petitioner, Cornelius Marshall, appeals the Fayette County Circuit Court's denial of his petition for post-conviction relief from two counts of attempted first degree murder, one count of facilitation to commit aggravated arson, and resulting effective twenty-five-year sentence. He contends that he received the ineffective assistance of counsel and that he did not plead guilty knowingly, intelligently, and voluntarily. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Periann Houghton, Brownsville, Tennessee, for the appellant, Cornelius Marshall.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

At the petitioner's guilty plea hearing, the State presented the following factual account of the crimes: On January 7, 2004, Pauline Rivers, Tyrone Walker, and the petitioner drove to a store in Moscow, Tennessee. While Rivers waited in the car, the petitioner and Walker went into the store and bought milk. A videotape surveillance camera recorded the petitioner and Walker as they walked outside, emptied the milk jugs, and filled the jugs with gasoline. The petitioner and his co-defendants then drove to John and Mandy Mullins' home on Liberty Road, where they poured the gasoline around the house, ignited the gasoline, and fled. At the scene, the police found a partially burned milk jug with gasoline on it. The petitioner gave a statement to police in which he admitted

going to the store with his co-defendants. However, he claimed that they took him home and that he did not go to the Mullins' house. The petitioner's co-defendants also gave statements to the police.

The petitioner was charged with two counts of attempted first degree murder and one count of aggravated arson. He pled guilty to the attempted murder counts and one count of facilitation to commit aggravated arson. Pursuant to the plea agreement, the trial court sentenced him as a standard, Range I offender to concurrent sentences of twenty-five years for each attempted murder conviction and twelve years for the facilitation conviction. Subsequently, the petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel because his trial attorney failed to investigate his case properly and failed to determine whether he had a mental defense. He also claimed that he did not enter his guilty pleas knowingly, intelligently, and voluntarily. The post-conviction court appointed counsel, and counsel did not file an amended petition.

At the evidentiary hearing, the petitioner testified that trial counsel visited him four or five times in jail and asked him questions. They talked about his pleas but never talked about his defense, and the petitioner never had a mental evaluation. He said that he had paranoid behaviors and thoughts but that, to his knowledge, he did not suffer from a mental disease or defect. The petitioner told counsel that his mother was a potential witness, and counsel talked with the petitioner's mother. The petitioner and counsel also talked about filing a motion for change of venue, but counsel never filed the motion. The petitioner told counsel that his confession to police was coerced, but counsel did not file a motion to suppress the statement. The petitioner stated that he wished he had gone to trial, that he never planned to harm anyone, and that he participated in the crimes because he was trying to "make quick money . . . for an insurance scam." He said that Pauline Rivers would have testified against him at trial but that she was the only witness who could have hurt his defense. The petitioner stated that Rivers also received an effective twenty-five year sentence, which was unfair because Rivers "did everything" and the petitioner was "just there."

The petitioner testified that he had three days to think about the State's plea offer. Counsel told the petitioner that accepting the State's offer "was the right thing to do because that was the best I was going to get." The petitioner talked with his mother about the offer and understood that he would be eligible for parole after serving thirty percent of the sentences. He decided to accept the offer because "[a]nything else would probably been at a hundred percent." At first, the petitioner testified that he did not know he was going to receive an effective twenty-five year sentence. However, he later stated that he knew at the guilty plea hearing that his sentence would be twenty-five years. He said that his effective sentence was excessive because he did not try to kill anyone and that he wanted the sentence reduced because it was not his idea to hurt the victims. He acknowledged that he told counsel he did not understand what was going on. He said he had prior misdemeanor convictions but "nothing like this" on his record.

On cross-examination, the petitioner acknowledged that counsel filed a motion to reduce his bond and that the trial court reduced his bond from $250,000 to $100,000. He acknowledged that

co-defendant Tyrone Walker was his uncle and said that Walker lied to police by telling them it was the petitioner's idea to set fire to the Mullins' home. The petitioner told the police that he went with Rivers and Walker to the store but that he did not go with them to Liberty Road. The petitioner stated that he lied to the police and drove with his co-defendants to the Mullins' home but never got out of the car. He believed that if he had gone to trial, he would have been convicted only of aggravated arson. He said that during the guilty plea hearing, he lied to the trial court because he "just wanted to get it over with" and that if counsel had been a good lawyer, the petitioner would have gone to trial. He acknowledged having prior convictions for resisting arrest and domestic assault.

The petitioner's trial attorney testified that he was appointed to represent the petitioner and talked with the petitioner and the petitioner's girlfriend. At the time of the appointment, counsel had been practicing law for fourteen years and had worked in the public defender's office for seven years. The petitioner never indicated that he did not understand the severity of the charges or what was going on and, therefore, counsel did not request a mental evaluation. Counsel did not remember how far the petitioner went in school or if the petitioner was a special education student, and nothing indicated that the petitioner had a limited intelligence quotient (IQ). Counsel acknowledged that Pauline Rivers' attorney filed a motion for change of venue. However, counsel did not file a similar motion because the trial court denied Rivers' motion. The State gave counsel access to its case file, and counsel gave a copy of all discovery materials to the petitioner. In the petitioner's statement to police, the petitioner said he went to the store with his co-defendants but did not go to the scene of the fire. Counsel did not believe the petitioner's statement would have hurt the defense and did not file a motion to suppress it.

Counsel testified that he advised the petitioner not to accept the State's first plea offer because it required that the petitioner be sentenced as a multiple offender instead of a standard offender. When the State made a second offer, counsel advised the petitioner about his options, and the petitioner decided to accept the offer. Counsel did not tell the petitioner that he needed to plead guilty but told him that he had a very good chance of being convicted at trial because of the store's surveillance tape and Rivers' testimony. The petitioner claimed that he did not know John and Mandy Mullins were in the home at the time of the fire and did not understand how he could be found guilty of aggravated arson without knowledge of their presence. Counsel told the petitioner that he could be found guilty even though he did not know the victims were in the house. Before the petitioner accepted the plea offer, he told counsel, "I think they got me." By making that statement, counsel "got the impression that a light came on to [the petitioner] . . . that [the State] had enough [evidence] to convict him."

On cross-examination, counsel acknowledged that most of his practice involved criminal law and that he had handled thirty to forty jury trials. He also acknowledged that in Rivers' statement to police, she said that it was the petitioner's idea to set the Mullins' house on fire. Counsel contacted the district attorney's office several times about a plea, but the State would not make a plea offer. Later, the State offered to let the petitioner plead guilty and receive a thirty-year sentence as a Range II offender. On redirect examination, counsel acknowledged that, at first, he believed the

petitioner would not be convicted of attempted first degree murder. However, after counsel saw the State's evidence, he changed his mind. At the time of the petitioner's pleas, counsel was prepared to go to trial. In preparing for trial, counsel talked with an investigator and studied Pauline Rivers' statement to police. Counsel was hoping to discredit Rivers' testimony, invoke sympathy for the petitioner, and show that the petitioner did not know the victims were in the house. Counsel did not talk to a witness from the store or the victims.

The post-conviction court specifically accredited counsel's testimony, concluding that the petitioner understood the consequences of his guilty pleas and his sentences. The court noted that the evidence against the petitioner was overwhelming and that in light of the evidence against him, counsel negotiated the best possible plea from the State. The court also noted that counsel met with the petitioner, discussed the case with him, and discussed possible sentences. The post-conviction court referred to the guilty plea hearing transcript, noting that the petitioner stated he was satisfied with counsel's representation, understood what he was doing, and did not have any questions about the guilty plea hearing. The petitioner also stated at the hearing that he went over the guilty plea form with counsel. The sentences were included on the form, and the petitioner signed the form. The post-conviction court concluded that the petitioner failed to show that counsel rendered deficient performance or that he was prejudiced by any deficiency. The court also concluded that the petitioner entered his guilty pleas knowingly, intelligently, and voluntarily.

## II. Analysis

The petitioner claims that he received the ineffective assistance of counsel because his trial attorney failed to investigate his case properly, did not speak with any witnesses, and failed to have the petitioner psychologically evaluated. He also claims that his guilty pleas were not knowing, intelligent, and voluntary because he did not understand what he was doing when he pled guilty. The State claims that the trial court properly denied the petition for post-conviction relief. We agree with the State.

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of

fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id. "To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

When a defendant enters a guilty plea, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

Regarding the petitioner's claim that he received the ineffective assistance of counsel because his attorney failed to investigate his case, failed to speak with witnesses, and failed to have him psychologically evaluated, the post-conviction court specifically accredited counsel's testimony over that of the petitioner. Counsel testified that he met with the petitioner several times, spoke with the petitioner's mother, talked with an investigator, and studied Pauline Rivers' statement to police. He also stated that he did not seek a psychological evaluation for the petitioner because the petitioner never indicated that he did not understand what was going on or the severity of the offenses. The petitioner testified that, to his knowledge, he did not have a mental disease or defect, and no mental health experts testified at the hearing. Although the petitioner claims that counsel should have spoken with witnesses, the petitioner did not specifically name any potential witnesses and did not present the witnesses at the evidentiary hearing. See Black v. State, 794 S.W.2d 752,757 (Tenn. Crim. App. 1990). We agree with the post-conviction court that the petitioner has failed to show that he received the ineffective assistance of counsel.

As to the petitioner's claim that he did not knowingly, intelligently, and voluntarily enter his guilty pleas, the petitioner testified that he did not understand what he was doing at the guilty plea hearing. However, counsel testified that the petitioner never indicated that he did not understand. Moreover, the petitioner testified that he had three days to think about the State's offer, that he spoke with his mother about it, that he understood he would be eligible for parole after serving thirty percent, and that he decided to accept the offer. He also stated that he understood at the guilty plea

hearing that his effective sentence would be twenty-five years. Like the post-conviction court, we have reviewed the petitioner's guilty plea hearing transcript. At the plea hearing, the petitioner stated that he was twenty-seven years old and had an eleventh-grade education. The petitioner acknowledged that he reviewed the guilty plea form with his attorney and understood what he was doing. The trial court read the convictions and the sentences, and the petitioner stated that he understood the plea arrangement. The trial court then asked the petitioner a series of questions, and the petitioner answered yes and no at the appropriate times. We agree with the post-conviction court that the guilty plea hearing transcript and the testimony at the evidentiary hearing demonstrate that the petitioner pled guilty knowingly, intelligently, and voluntarily.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE